**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

_____
                                                    )
DUNKIN' DONUTS FRANCHISING LLC,          )
  a Delaware Limited Liability Company,          )
DUNKIN' DONUTS FRANCHISED                )
  RESTAURANTS LLC,                       )
  a Delaware Limited Liability Company,          )
DD IP HOLDER LLC,                        )
  a Delaware Limited Liability Company, and      )
DB REAL ESTATE ASSETS I LLC,             )
  a Delaware Limited Liability Company,          )
                                                    )
            Plaintiffs,                  )
                                                    )
      v.                                 )          C.A. No. _____
                                                    )
COELHO FAMILY DONUTS, INC.,              )
  a Massachusetts Corporation,           )
FAMILY DONUTS, INC.,                     )
  a Massachusetts Corporation,           )
BILLERICA DONUTS, INC.,                  )
  a Massachusetts Corporation,           )
ESMERALDA REYNOLDS,                      )
  a resident of Massachusetts,           )
ANTONIO COELHO,                          )
  a resident of Massachusetts, and       )
MARIA COELHO,                            )
  a resident of Massachusetts,           )
                                                    )
            Defendants.                  )
_____)

## COMPLAINT

This is an action for breach of contract, trademark infringement, trade dress infringement,

and unfair competition arising from Defendants' breaches of their Franchise Agreements for,

among other things, intentional underreporting of sales and failing to maintain required books

and records.  Plaintiffs recently terminated Defendants' Franchise Agreements and a Sublease

with Dunkin' based on this conduct, and seek monetary, injunctive, and other relief against

Defendants for the reasons set forth below.

**Parties**

1.      Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability

company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  It is

engaged in the business of franchising independent businesspersons to operate "Dunkin' Donuts"

shops throughout the United States.  All Dunkin' Donuts Franchise Agreements dated on or after

May 26, 2006 are in the name of Dunkin' Donuts Franchising LLC.  Dunkin' Donuts franchisees

are licensed to use trade names, service marks, and trademarks of Dunkin' Donuts and to operate

under the Dunkin' Donuts system, which involves the production, merchandising, and sale of

doughnuts and related products utilizing a specially designed building with special equipment,

equipment layouts, interior and exterior accessories, identification schemes, products,

management programs, standards, specifications, proprietary marks and identification.

2.      Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to

Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of

business at 130 Royall Street, Canton, Massachusetts.  All Dunkin' Donuts Franchise

Agreements dated prior to May 26, 2006 have been assigned to Dunkin' Donuts Franchised

Restaurants LLC.  It is engaged in the business of franchising independent businesspersons to

operate "Dunkin' Donuts" shops throughout the United States.  Dunkin' Donuts franchisees are

licensed to use trade names, service marks, and trademarks of Dunkin' Donuts and to operate

under the Dunkin' Donuts system, which involves the production, merchandising, and sale of

doughnuts and related products utilizing a specially designed building with special equipment,

equipment layouts, interior and exterior accessories, identification schemes, products,

management programs, standards, specifications, proprietary marks and identification.

3.      Plaintiff DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Dunkin' Donuts Franchised Restaurants LLC has a license to use and license others to use these marks and trade name and along with its predecessors has used them continuously since approximately 1960 to identify their doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops. Unless otherwise specified, Dunkin' Donuts Franchising LLC, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin' Donuts" or "Dunkin'."

4.      Plaintiff DB Real Estate Assets I LLC ("DB Real Estate"), a successor-in-interest to Third Dunkin' Donuts Realty, Inc. ("Dunkin' Realty"), is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  It is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' Donuts to franchise independent businesspersons to operate Dunkin' Donuts shops at those locations.

5.      Defendant Coelho Family Donuts, Inc. is a Massachusetts corporation and, upon information and belief, its principal place of business is located in Billerica, Massachusetts. Defendant Coelho Family Donuts, Inc. was the owner of a Dunkin' Donuts shop located at 459 Boston Road, Billerica, Massachusetts, pursuant to a Franchise Agreement dated October 30, 2001.

6.      Defendant Family Donuts, Inc. is a Massachusetts corporation and, upon information and belief, its principal place of business is located in Billerica, Massachusetts.

Defendant Family Donuts, Inc. was the owner of a Dunkin' Donuts shop located at 729 Boston Road, Billerica, Massachusetts, pursuant to a Franchise Agreement dated December 16, 2009.

7.      Defendant Billerica Donuts, Inc. is a Massachusetts corporation and, upon information and belief, its principal place of business is located in Billerica, Massachusetts. Defendant Billerica Donuts, Inc. was the owner of a Dunkin' Donuts shop located at 647 Boston Road, Billerica, Massachusetts, pursuant to a Franchise Agreement dated September 23, 2005.

8.      Defendant Esmeralda Reynolds is a natural person and, upon information and belief, is a citizen and resident of the Commonwealth of Massachusetts.  Defendant Esmeralda Reynolds is an officer, member, and/or shareholder of the corporate Defendants and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees.

9.      Defendant Antonio Coelho is a natural person and, upon information and belief, is a citizen and resident of the Commonwealth of Massachusetts.  Defendant Antonio Coelho is an officer, member, and/or shareholder of the corporate Defendants and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees.

10.     Defendant Maria Coelho is a natural person and, upon information and belief, is a citizen and resident of the Commonwealth of Massachusetts.  Defendant Maria Coelho is an officer, member, and/or shareholder of the corporate Defendants and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees.

**Jurisdiction and Venue**

11.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1338, & 1367(a).

12.     This Court has *in personam* jurisdiction over Defendants because they are residents of this District who also conduct business in this District, and the events giving rise to

Plaintiffs' claims occurred in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## Background Facts

### The Dunkin' Donuts System

14.     Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

15.     DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

16.     The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

17.     The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

18.     The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years.  Between 1971 and 2007, Dunkin' and its franchisees spent almost $2 billion on advertising and promoting the Dunkin' Donuts marks.  Dunkin' spent approximately $190 million in fiscal year 2007 alone on advertising and promotion.

19.     Dunkin' and its franchisees currently operate over 6,500 shops in the United States and 2,500 shops outside of the United States.  Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style.  In the more than fifty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

20.     As a result of the extensive sales, advertising, and promotion of items identified

by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts

marks, and to associate them exclusively with products and services offered by Dunkin' Donuts

and its franchisees.  The Dunkin' Donuts marks are among the best and most widely known

trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts,

representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

<strong>Defendants' Obligations Under the Franchise Agreements</strong>

21.     Defendants were formerly licensed to use Dunkin's trade names, trademarks, and

trade dress in accordance with the terms of the Franchise Agreements.

22.     Under the terms of the Franchise Agreements, Defendants agreed they would use

Dunkin's proprietary marks, including, but not limited to, its trademarks, logos, emblems, trade

dress and other indicia of origin, only in the manner and to the extent specifically licensed by the

Agreements.  (Franchise Agreement ¶¶ 7.0 and 7.1.[1])

23.     Defendants agreed that any unauthorized use of Dunkin's proprietary marks

during or after the expiration or earlier termination of the agreements would constitute an

incurable default causing irreparable harm subject to injunctive relief.  (Franchise Agreement ¶¶

7.1, 9.4.2 and 9.4.3.)

24.     Under the Family Donuts and Coelho Family Donuts Franchise Agreements,

Defendants agreed to pay Dunkin' Donuts a franchise fee of 5.9 percent of the gross sales of the

business.  (Contract Data Schedule Item "E" or "E1", Franchise Agreement ¶ 4.3 or 5.2.)  Under

the Billerica Donuts Franchise Agreement, Defendants agreed to pay Dunkin' Donuts a franchise

fee of 4.9 percent of the gross sales of the business.  (Contract Data Schedule Item "E",

---

[1]     Unless stated otherwise, paragraph references are to the Billerica Donuts, Inc. Franchise
Agreement; however, substantially similar provisions exist with varying paragraph numbers for
all of the Franchise Agreements at issue.

Franchise Agreement ¶ 4.3.)

25.     Under the terms of the Franchise Agreements, Defendants agreed to do certain things, including the following:

a)     to pay Dunkin' Donuts an advertising fee of 5 percent of the gross sales of the business.  (Contract Data Schedule Item "F", Franchise Agreement ¶ 4.4.);

b)     to accurately report on an approved form each month profit and loss statements for the preceding calendar month.  (Franchise Agreement ¶ 5.2.2.);

c)     to keep full, complete, and accurate books and accounts in accordance with generally accepted accounting principles and in a form and manner as may be prescribed by Dunkin' Donuts.  (Franchise Agreement ¶ 5.2.);

d)     to make available for inspection at reasonable times all original books, records, and supporting documents that may be necessary to verify gross sales.  (Franchise Agreement ¶¶ 6.2. and 6.3.);

e)     to pay the cost and expense, including reasonable accounting and legal fees, of any inspection, examination, or audit necessitated by a failure to prepare, deliver, or preserve statements or records required by the Franchise Agreement, or if such inspection discloses a discrepancy in the gross sales reported to Dunkin'.  (Franchise Agreement ¶ 6.2.); and

f)     to pay interest on unpaid monies due under the Franchise Agreement. (Franchise Agreement ¶ 4.7.)

26.     The Franchise Agreements each contain a "cross-default" provision, which states that the termination of one Franchise Agreement constitutes grounds for the termination of all of the other Franchise Agreements, and each of them individually.  (Franchise Agreement ¶ 9.0.4.)

27.     Under the Franchise Agreements, no cure period is available if Defendants are in default under any paragraph designated in 9.0.1 through 9.0.4, if they intentionally underreport gross sales, if they falsify financial data, or if they otherwise commit an act of fraud with respect to their obligations under the Agreements.  (Franchise Agreement ¶ 9.1.4.)  Moreover, as a matter of law, no cure period is available for such defaults.

28.     Defendants agreed that, upon the termination of the Franchise Agreements, their rights to use Dunkin's proprietary marks and system would immediately cease, and that they would promptly pay Dunkin' any damages, costs, and expenses, including reasonable attorneys' fees, incurred by Dunkin' as a result of the Defendants' default(s).  (Franchise Agreement ¶¶ 9.3, 9.4., 9.4.1. and 9.4.2.)

29.     Defendants agreed that any unauthorized use of Dunkin's proprietary marks following the effective date of the termination of the Franchise Agreements would result in irreparable harm to Dunkin' and would constitute willful trademark infringement.  (Franchise Agreement ¶ 9.4.3.)

### The Sublease and Lease Riders/Option Agreements

30.     On October 1, 1986, Defendant Billerica Donuts, Inc. was assigned a Sublease for the Dunkin' Donuts shop located at 647 Boston Road, Billerica, Massachusetts by Dunkin' Realty, which transferred all of its rights to the shop to DB Real Estate on May 26, 2006.  The Sublease provides that DB Real Estate has the right to terminate the Sublease if the corresponding Franchise Agreement for the shop is terminated for any reason.  Further, the Sublease gives DB Real Estate the right, upon termination, to enter upon the premises and repossess the same and expel Defendants.

31.     Pursuant to lease rider or lease option agreements, Dunkin' has the option and

right to assume the leases for the remainder of Defendants' shops if the Franchise Agreements

for those shops are terminated.

## Defendants' Defaults

32.     Dunkin' recently discovered that Defendants breached their Franchise

Agreements and Sublease by the conduct described below.

33.     Dunkin' conducted an investigation of Defendants' businesses.  An investigation

into Defendants' sales reporting practices and a review of their financial records revealed that

they have failed to accurately report all sales to Dunkin' and to pay all fees owed on those sales.

Defendants' acts included, but were not limited to, intentionally reducing the weekly sales

reported to Dunkin' in an amount totaling nearly $120,000.

34.     Defendants have also repeatedly failed to maintain full, complete, and accurate

financial records for each week.

35.     Defendants' acts constitute breaches of the Franchise Agreements and Sublease

warranting immediate termination.

36.     Based on the foregoing, and pursuant to the applicable provisions of the Franchise

Agreements and Sublease, on December 28, 2010, Dunkin' sent to Defendants a Notice of

Default and Termination, terminating the Franchise Agreements and Sublease immediately upon

Defendants' receipt of the Notice, stating the grounds for termination, and demanding that

Defendants immediately comply with their post-termination obligations as set forth in the

Franchise Agreements and Sublease.

37.     To date, Defendants have refused to accept termination and are continuing to

operate the franchised business under the Dunkin' Donuts trademarks.

## COUNT I
### (Fraud)

38.    The allegations of paragraphs 1 through 37 are hereby incorporated by reference.

39.    At a date unknown, Defendants entered into a scheme to defraud Dunkin' Donuts.

40.    It was part of the scheme to misrepresent and conceal the actual amount of gross sales made in connection with the franchised businesses.

41.    It was part of the scheme to report gross sales figures to Dunkin' that differed from those actually achieved.

42.    It was part of the scheme to fail to record all sales and transmit those reports to Dunkin'.

43.    It was part of the scheme to falsify the businesses' books and records.

44.    In furtherance of the scheme, Defendants:

   (a)    misrepresented and concealed the actual gross sales of the franchises;

   (b)    reported gross sales figures to Dunkin' Donuts that differed from those actually achieved;

   (c)    prepared and transmitted fraudulent reports to Dunkin' Donuts; and

   (d)    falsified the businesses' books and records.

45.    The scheme to defraud entailed the active misrepresentations of material facts, including the amount of gross sales made each week and the amount due as franchise fees and advertising fees pursuant to the Franchise Agreements.

46.    The scheme to defraud was devised and executed willfully and maliciously with the specific intent to defraud Dunkin' Donuts of the money owed under the Franchise Agreements.

47.    Dunkin' Donuts relied upon the misrepresentations and fraudulent omissions of

Defendants to their detriment and pecuniary loss.

48.     The conduct described above constitutes fraud that cannot be "cured" as a matter
of law, and is grounds for terminating Defendants' Franchise Agreements.  This conduct also
constitutes intentional underreporting of gross sales and falsification of financial data, for which
no cure period is available under the Franchise Agreements, and is grounds for terminating the
Franchise Agreements.

49.     As a result of Defendants' actions, Dunkin' Donuts has suffered and is continuing
to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an
amount that has yet to be determined.

## COUNT II
### (Breach of Contract – Franchise Agreements)

50.     The allegations of paragraphs 1 through 49 are hereby incorporated by reference.

51.     The conduct described herein constitutes breaches of the contractual obligations
contained in the Franchise Agreements and cited herein.

52.     These breaches constitute grounds for terminating the Franchise Agreements.

53.     As a result of Defendants' actions, Dunkin' Donuts has suffered and is continuing
to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an
amount that has yet to be determined.

## COUNT III
### (Breach of Contract – Sublease)

54.     The allegations of paragraphs 1 through 53 are hereby incorporated by reference.

55.     The conduct described herein constitutes breaches of the contractual obligations
contained in the Sublease with DB Real Estate.

56.     These breaches constitute grounds for terminating the Sublease.

57.     As a result of Defendants' actions, DB Real Estate has suffered and is continuing

to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an

amount that has yet to be determined.

## COUNT IV
### (Trademark Infringement)

58.     The allegations of paragraphs 1 through 57 are hereby incorporated by reference.

59.     The use in commerce of the Dunkin' Donuts trademarks and trade names by

Defendants outside the scope of the Franchise Agreements and without Dunkin's consent is

likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized

activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved

by Dunkin'.  Such unauthorized use of Dunkin' Donuts trademarks and trade names infringes

Dunkin' Donuts' exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. §

1114 and applicable state law.

60.     The acts of Defendants were and are being done knowingly and intentionally to

cause confusion, or to cause mistake, or to deceive.

61.     As a result of Defendants' actions, Dunkin' has suffered and is continuing to

suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an

amount that has yet to be determined.

## COUNT V
### (Unfair Competition)

62.     The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63.     The use in commerce of Dunkin' Donuts trademarks and trade names by

Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' is

likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or

approval of their goods, services, or commercial activities by another person.  Such unauthorized use of Dunkin's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

64.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

65.     As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT VI
### (Trade Dress Infringement)

66.     The allegations of paragraphs 1 through 65 are hereby incorporated by reference.

67.     Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same lettering style and in the same distinctive color scheme as Dunkin' Donuts uses for the doughnut shops operated by Dunkin' Donuts licensees.

68.     The use by Defendants of trade dress that is identical to the Dunkin' Donuts trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' shops operated by Dunkin' Donuts licensees.  Such adoption of Dunkin's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

69.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

70.     As a result of Defendants' actions, Dunkin' has suffered and is continuing to

suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

A.      Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreements and Sublease and constitutes grounds for terminating them;

B.      Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements and Sublease *nunc pro tunc* as of the effective date of the termination;

C.      Enter judgment in favor of Plaintiffs for the damages incurred as a result of Defendants' breaches of the Franchise Agreements and Sublease;

D.      Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin' Donuts' trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin';

E.      Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreements, Sublease, and any Lease Riders and Lease Option Agreements, and taking all steps required to transfer their leasehold interests in the shop to Plaintiffs or their designee, in the event that Plaintiffs elect to exercise any rights they or any of their affiliates or subsidiaries might have in such interests;

F.      Enter an order directing Defendants to account to Dunkin' for all sales made and receipts earned during the term of the franchise relationship;

G.      Award Plaintiffs judgment against Defendants for the damages they have

sustained and the profits Defendants have derived as a result of their actions, and that such

damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of

the Lanham Act, 15 U.S.C. § 1117;

H.      Award Plaintiffs such exemplary or punitive damages as are deemed appropriate

because of the willful, intentional, and malicious nature of the conduct of Defendants;

I.      Award Plaintiffs their costs and attorneys' fees incurred in connection with this

action pursuant to contract, and § 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs

incurred in conducting all inspections and audits;

J.      Award Plaintiffs prejudgment interest in accordance with § 35 of the Lanham Act,

15 U.S.C. § 1117; and

K.      Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Donna M. Brewer
Robert A. Murphy (BBO# 363700)
Donna M. Brewer (BBO# 545254)
CASNER & EDWARDS, LLP
303 Congress Street, 2nd Floor
Boston, Massachusetts 02210
Telephone:     (617) 426-5900
Facsimile:     (617) 426-8810
rmurphy@casneredwards.com
brewer@casneredwards.com

Robert L. Zisk
David E. Worthen
Jimmy Chatsuthiphan
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:     (202) 295-2200
Facsimile:     (202) 295-2250

15

*Attorneys for Plaintiffs*

Dunkin' Donuts Franchising LLC, Dunkin' Donuts
Franchised Restaurants LLC, DD IP Holder LLC,
and DB Real Estate Assets I LLC

Dated:  December 30, 2010

3648.136/499642.1